**Larry L. Linder, OSB #010724**
llinder@salememploymentlawyer.com
**John D. Burgess, OSB #106498**
jburgess@salememploymentlawyer.com
The Law Office of Larry L. Linder, LLC
2245 Commercial St NE
Salem, OR 97303
Tel: (503)585-1804
Fax: (503)585-1834
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **LEE AMBROSE,** | Case No. 3:12-cv-01740-HU |
| Plaintiff, | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| **J. B. HUNT TRANSPORT, INC.,** a foreign corporation, | |
| Defendant. | |

**Page i- Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii
TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii
INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
OBJECTIONS TO DEFENDANT'S STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . 7
STANDARD FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
    I.    After-Acquired Evidence Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
    II.    Interference with Oregon Family Leave Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
        1.    Defendant failed to inform Plaintiff of his rights under Oregon's Family
            Leave Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
        2.    Defendant interfered with Plaintiff's rights under OFLA. . . . . . . . . . . . . . . 13
            A.    Plaintiff suffered damages as a result of Defendant's conduct. . . . . .13
            B.    Plaintiff suffered from a serious health condition. . . . . . . . . . . . . . . 14
    III.    Plaintiff's Disability/Perceived Disability Claims. . . . . . . . . . . . . . . . . . . . . . . . .14
        1.    Disparate Treatment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
            A.    Plaintiff is Disabled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                i.    Plaintiff is Actually Disabled. . . . . . . . . . . . . . . . . . . . . . . . .16
                ii.    Defendants Regarded Plaintiff as Substantially Limited in
                    Major Life Activities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            B.    Plaintiff is a Qualified Individual. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            C.    Plaintiff Suffered Adverse Employment Actions . . . . . . . . . . . . . . . .19
            D.    Defendants' Proffered Reasons are Pretextual. . . . . . . . . . . . . . . . . . 20
        2.    Defendants failed to Engage in the Interactive Process . . . . . . . . . . . . . . . . .23
        3.    Defendants failed to Provide Plaintiff with Reasonable Accommodation. . . . . 24
        4.    Defendant Retaliated Against Plaintiff for Engaging in Activity. . . . . . . . . . . . 25
    IV.    Workers' Compensation Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27
        1.    Plaintiff Has Stated A Prima Facie Case of Workers' Compensation
            Discrimination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            A.    Plaintiff invoked the workers' compensation system. . . . . . . . . . . . 27
                 i.    Plaintiff reported on-the-job injuries. . . . . . . . . . . . . . . . . . . .28
                 ii.    Although irrelevant, Ambrose's injuries were compensable. . . . .29
            B.    Ambrose has established a causal link between his invocation of
                the workers' compensation system and Defendant's discriminatory
                conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31
        2.    Defendant's proffered reasons for discriminating against Plaintiff are
            Pretextual . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

**Page ii- Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion for
Summary Judgment**

*Law Office of Larry L. Linder, LLC*
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804 (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

# **TABLE OF AUTHORITIES**

## **Federal Cases**

*Albertson's, Inc. v. Kirkingsburg*,
   527 U.S. 555, 119 S. Ct. 2162 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct 2505 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Balint v. Carson City*,
   180 F.3d 1047 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Barnett v. U.S. Airways, Inc.*,
   228 F.3d 1105 (9th Cir. 2000),
   *overruled on other grounds*, 535 U.S. 391 (2002). . . . . . . . . . . . . . . . . . . . . . . . .15, 23, 26

*Bates v. United Parcel Serv.*,
   2004 WL 2370633 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Big Apple BMW, Inc. v. BMW of N. Amer. Inc.*,
   974 F.2d 1358 (3rd Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). . . . . . . . . . . . . . . . . . .8

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Chuang v. U. of Cal. Davis, Bd. Of Trustees*,
   225 F.3d 1115 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21, 33

*Dadian v. Village of Willamette*,
   269 F.3d 831 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Daoud v. Avamere Staffing, LLC*,
   336 F.Supp.2d 1129 (D. Or. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Devi v. Or. Dep't of Corr.*,
   Case No. 6:12-cv-00841-AA, *10 (D. Or. July 9, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Edgar v. JAC Products, Inc.*,
   443 F.3d 501 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Head v. Glacier Nw., Inc.*,
   413 F.3d 1053 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Hoffman v. Caterpillar, Inc.*,
   256 F.3d 568 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

**Page iii- Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion for
Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

*Johnson v. The Evangelical Lutheran Good Samaritan Society*,
   2005 WL 2030834, p.13 (D. Or. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Lowe v. City of Monrovia*,
   775 F.2d 998 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986) . . . . . . . . . . . . . 34

*Mantolete v. Bolger*,
   767 F.2d 1416 (9th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*McDonnell-Douglas Corp. v. Green*,
   411 U.S. 792, 93 S. Ct. 1817 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 24

*McKennon v. Nashville Banner Publ'g*,
   513 U.S. 352, 115 S. Ct. 879 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 10

*Miller v. Fairchild Indus., Inc.*,
   797 F.2d 727 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32, 34

*Morton v. United Parcel Serv.*,
   272 F.3d 1249 (9th Cir. 2001), *cert. denied sub nom.*,
   *United Parcel Serv. v. Morton*, 535 U.S. 1054, 122 S. Ct. 1910 (2002) . . . . . . . . . . . . . 23

*Noyes v. Kelly Srvcs.*,
   488 F.3d 1163 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*Pardi v. Kaiser Foundation Hospitals*,
   389 F.3d 840 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Payne v. Norwest Corp.*,
   113 F.3d 1079 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

*Raytheon Co. v. Hernandez*,
   540 U.S. 44, 124 S. Ct. 513 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133, 120 S. Ct. 2097 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Roberts v. Dimension Aviation*,
   319 F.Supp.2d 985 (D. Ariz. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sanders v. City of Newport*,
   657 F.3d 772 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Santrizos v. Evergreen Fed. Savings & Loan Ass'n*,
   2007 U.S. Dist. 84819, (D. Or. Nov. 14, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

///

**Page iv- Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion for
Summary Judgment**

*Shepard v. City of Portland*,
   Civil No. 09-0021-AA, (D. Or. Oct. 20, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Snead v. Metro. Prop. & Cas. Ins. Co.*,
   237 F.3d 1080 (9th Cir.), *cert. denied*,
   534 U.S. 588, 122 S. Ct. 201, 151 L.Ed.2d 142 (2001) . . . . . . . . . . . . . . . . . . . 15, 19, 20

*Texas Dep't of Cmty. Affairs v. Burdine*,
   450 U.S. 248, 101 S. Ct. 1089 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Toyota Motor Mfg., Ky., Inc. v. Williams*,
   534 U.S. 184, 122 S. Ct. 681 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*U.S. Postal Srvc. Bd. of Governors v. Aikens*,
   460 U.S. 711, 103 S. Ct. 1478, (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Vasquez v. County of Los Angeles*,
   349 F.3d 634 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Weigel v. Target Stores*,
   122 F.3d 461 (7th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Xin Liu v. Amway Corp.*,
   347 F.3d 1125 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Yartzoff v. Thomas*,
   809 F.2d 1371 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

## State Cases

*Anglin v. Dept. of Corrections*,
   160 Or.App. 463, 982 P.2d 547,
   *rev. den.*, 329 Or. 357, 994 P.2d 124 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

*Camp v. Jeffer, Mangles, Butler & Marmaro*,
   35 Cal. App. 4th 620 (Cal. App. 2d Dist. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Cedeno v. Montclair State U.*,
   750 A.2d 73 (N.J. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Evans v. Multnomah County Sheriff's Office*,
   184 Or. App. 733, 57 P.3d 211 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 16, 19

**Page v- Memorandum of Law in Support of**
**Plaintiff's Response to Defendant's Motion for**
**Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

*In re Hamilton*,
    256 Or.App. 256 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*Henderson v. Jantzen, Inc.*,
    79 Or.App. 654, 719 P.2d 1322 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Honstein v. Metro West Ambulance Service, Inc.*,
    193 Or.App. 457, 90 P.3d 1030 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Marshall v. Bob Kimmel Trucking*,
    109 Or.App. 101, 817 P.2d 1346 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . .30, 31

*McPhail v. Milwaukee Lumber Co.*,
    999 P.2d 1144, 165 Or.App. 596 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . .28, 29

## Federal Statutes and Rules

29 C.F.R. § 825.302. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

29 C.F.R. § 1630. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

42 U.S.C. § 12112. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

42 U.S.C. § 12102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

42 U.S.C. 1630. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

FRE 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

FRE 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

## Oregon Statutes and Rules

OAR 839-006-0105. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

OAR 839-006-0200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

OAR 839-006-0205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

OAR 839-006-0206. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23, 24

OAR 839-006-0305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

OAR 839-009-0210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Page vi- Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion for
Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

OAR 839-009-0212 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ORS 659A.030 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

ORS 659A.040 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

ORS 659A.043 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

ORS 659A.046 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

ORS 659A.100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

ORS 659A.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

ORS 659A.109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

ORS 659A.112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 15, 23, 25, 26

ORS 659A.115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

ORS 659A.139 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 15

Civil Rights Act of 1964, §701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

Oregon UCJI No. 58.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

**Page vii- Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

## INTRODUCTION

Plaintiff has claims for violations of the Oregon Family Leave Act ("OFLA"), disability discrimination, retaliation, failure to engage in the interactive process, and workers' compensation discrimination. Defendant moved for summary judgment as to all claims. For the following reasons, Plaintiff requests Defendant's Motion be denied as to all claims.

## RELEVANT FACTS

Ambrose has been employed as a truck driver from age 21 to the present day. (Pl Dec ¶2). In 2005, Ambrose experienced accelerated heartbeat and nausea while driving truck for Vic West Steel. (Ex 1[1] pp 4-5). Ambrose went to the hospital and underwent testing to determine the cause of the symptoms. (*Id.*). He was referred to a cardiologist. (*Id.*). In 2006, a similar incident occurred and he underwent a catheter ablation, an outpatient procedure where a catheter with an electrode is inserted into an artery in the groin. (Ex 1 pp 2-3). In 2009, Ambrose was involved in a minor accident where he sneezed or coughed with the sun in his eyes, and briefly became disoriented, possibly losing consciousness long enough to lose control of the vehicle in loose gravel resulting in minor damage to his vehicle. (Ex 1 pp 28-31). After the incident, Ambrose did not believe he had suffered from a syncopal or cardiogenic event. (Ex 1 pp 23-33). Due to the circumstances of the accident, Ambrose did not believe it necessary to contact a cardiologist. (Pl Dec ¶3).

Defendant hired Ambrose April 27, 2011, starting on May 1, 2011. (Ex 1 p 8). On April 27, 2011, Ambrose filled out paperwork provided by Mario Nucci ("Nucci"). (*Id.*). Nucci was Ambrose's dispatcher and provided him with the initial employment paperwork. (*Id.*). After filling out the paperwork, Nucci sent Ambrose to meet with a medical examiner. (*Id.*). Ambrose informed the examiner verbally of his medical history, including his catheter ablation as well as the 2005 and 2006 incidents. (Ex 1 pp 9-10). Ambrose underwent a U.S. Department of Transportation ("DOT") medical examination between the 2005 and 2006 incidents and was cleared to drive after

---

[1] All references to exhibits are exhibits attached to the declaration of counsel unless otherwise noted.

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804 (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

disclosing his history. (Pl Dec ¶4). Ambrose did not mention the 2009 accident as he did not believe it was related to a medical condition. (Pl Dec ¶3).

On December 29, 2011, Ambrose departed from Portland to drive to Weed, Ca. for Defendant. (Ex 1 p 11-12). En route he experienced sinus congestion but did not feel ill. (Ex 1 pp 12, 14). He arrived in Weed at approximately 4:00 pm and stayed the night. (Ex 1 pp 12-13). In Weed, he purchased Dayquil for his congestion. (Ex 1 p 12). He was due in Portland by 10:00 am, and given the 5 1/2 hour drive had to leave Weed by 3:00 am. (Pl Dec ¶5). He spoke with Nucci by phone on the evening of December 29, 2013, and informed her he thought he might be coming down with a cold. (Ex 1 16-17). Ambrose rested for the full ten hours (4:00 pm to 2:00 am) as is required by DOT. (Ex 1 p 15).

Ambrose slept until 2:00 am and left Weed to return to Portland at approximately 2:45 am (Ex 1 p 15). He continued to suffer sinus pressure, and took a dose of Dayquil with his breakfast after 2:00 am. (Ex 1 p 13; Ex 9). At around 5:00 am, approximately 30 miles north of Grants Pass, while traveling approximately 56 miles per hour northbound on I-5, Ambrose began coughing and suffered a syncopal episode losing consciousness. (Ex 1 p 16). During the single vehicle accident, Ambrose remembers the truck rocking but he could not see because his eyes would not focus. (Ex 1 pp 18, 20). The truck rolled and came to a stop with the truck on its side on the far shoulder under an overpass with him hanging from his seat belt. (Ex 1 pp 19-20). A witness helped Ambrose out of the vehicle. (Ex 1 p 21).

First responders arrived on the scene shortly. (Ex 1 p 22). The accident was caused by Ambrose losing consciousness. (*Id.*). After Ambrose was helped out of the vehicle, he called Brad Kreider ("Kreider") who in turn patched Safety in on a three way call. (Ex 1 p 23). Ambrose, while disoriented from the accident, called Kreider and Safety informing them he was in an accident and was being transported by ambulance to the hospital. (Ex 1 pp 23-24, 26). Ambrose was interviewed in the hospital by David LaLande, a casualty investigator working for JB Hunt.

**Page 2 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
info@salememploymentlawyer.com

(Ex 6). Ambrose described the 2009-incident to LaLande, stating he had experienced lightheadedness on a previous occasion when driving a pickup truck. At the hospital, the ER physician told Ambrose he had a heart attack, they needed to conduct tests, and Ambrose needed to follow up with a cardiologist. (Ex 1 p 43). Ambrose's discharge papers state he was not to drive until cleared by a cardiologist. (*Id.*). Ambrose informed Defendant he was not cleared to drive until cleared by a cardiologist. (Ex 9). In a telephone conversation on January 3, 2012, Kreider informed Ambrose Defendant would conduct a Review the following day. Ambrose informed Kreider he was not cleared to drive by his cardiologist and thus would not be able to meet in person. (Ex 1 pp 33-35). Ambrose told Nucci he had a heart attack and he was not cleared by a cardiologist. (Ex 1 p 44-45). Ambrose asked Kreider if there was work within the cardiologist's restrictions; Kreider stated he would check for available positions. (Ex 1 p 39).

A Safety Event Review ("Review") is a formal accident review of the cause of an accident is determined in addition to measures to prevent future accidents. (Ex 2 p 2). Kreider does not know if there is a policy on how to conduct Reviews. (Ex 2 p 3). The Review of Ambrose's accident consisted of a conference call with Mike Nicholson ("Nicholson") (operations manager), Kreider (account manager), and Keith Phillips ("Phillips") (safety manager). Reviews are conducted by three people; the decision is made by plurality vote. (Ex 2 p 4). Phillips does not remember Ambrose or Nucci being at the Review. (Ex 4 p 2). The review occurred by telephone with no in-person meeting between the managers. (Ex 2 p 3).

Prior to the Review, Ambrose spoke with Kreider by telephone, again informing him he was not released to work until cleared by a cardiologist. (Ex 2 p 6). During the Review, via telephone, Ambrose retold the sequence of events above. (Ex 1 p 36). Ambrose responded to questions about the accident and his rest prior to the accident. He referred to the police report for some of the facts because much of the events were unclear to him. Kreider wrote down a description of the events based upon what Ambrose told him as well as his "notes of his

recollection of the accident." (Ex 2 p 7). About ten minutes after the call, Kreider called Ambrose back and asked him to text a picture of the Dayquil box. (Ex 1 p 37). Kreider asked Ambrose to provide a picture of the Dayquil to confirm it was not Nyquil. Ambrose provided the picture of the Dayquil package via text message. (Ex 2 p 8-9). Phillips believes Ambrose mailed or faxed the cover of the Dayquil box to them. (Ex 4 p 3). Kreider received the picture on his work cell phone; he does not have the picture anymore, and he does not recall having sent or received any other text messages to or from Ambrose. Kreider states he did not send any emails or text messages regarding Ambrose's accident. (Ex 2 p 10-11). When asked about the location of the notes to which he had previously referred, Kreider stated that he did not have any "physical," written notes. He attempted to explain away his prior inconsistent testimony about having taken notes by stating he meant the "thought processes in his head." (Ex 2 p 9-10).

On the Review form, there is a space for selecting the reason for discipline; the two options are "DOT violation" and "JB Hunt policy violation." Kreider selected DOT violation; one cannot select both. (Ex 2 p 12). Everything required by DOT is also required by Defendant's policy; thus its policy is a higher standard. (Ex 2 p 13). If an employee's actions violated that higher standard, it would be noted on the form. (Ex 2 p 14). Ambrose did not tell Kreider he was ill; Kreider inferred he was ill because he took Dayquil. (Ex 2 p 15). Kreider does not recall if they asked Ambrose he was suffering from an illness during the review. (Ex 2 p 15-16). Neither Kreider nor Phillips recall Ambrose tolling them he needed a release from his cardiologist to return to work. (Ex 2 p 17; Ex 4 p 4-5). Phillips does not believe any rule prohibits driving with a cold. (Ex 4 p 3). Phillips has never disciplined a driver for using Dayquil. (Ex 4 p 4). Ambrose is the only drive he has disciplined for driving with a cold. (*Id.*).

On January 5, 2013, Ambrose called Kreider to inform him had an appointment with a cardiologist on January 8, 2013. (Ex 1 p 38). Kreider told Ambrose " you saved me a phone call" because he had planned on calling Ambrose. Kreider informed Ambrose that if he could not

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
info@salememploymentlawyer.com

drive he could no longer be employed by Defendant. (*Id.*). Kreider stated that if Ambrose was cleared to drive by his cardiologist, they would review his case and see if they could be rehired. (*Id.*). Ambrose asked if there were any available positions within his restrictions and Kreider replied, "you no longer work for us." (Ex 1 p 42). Kreider cannot recall having any concerns with Ambrose's work performance. (Ex 2 p 28).

There are instances where an employee would be disciplined even if the accident were deemed unpreventable. However, it would be unusual to discipline a driver involved in an accident where the driver was in full compliance with Defendant's regulations and where the driver could not have prevented the accident. (Ex 2 p 20). Kreider believes that an accident could result in discipline if it were preventable and very expensive. (Ex 2 p 21). Kreider also believes that discipline if the accident caused an expensive injury. (*Id.*). After a break, Kreider came back and stated that the statement he made regarding expensive injuries was not correct and that he had been confused by the "verbiage" and that he had not understood the question. (Ex 2 p 21-22). The verbiage in the questions was not confusing. (Ex 2 p 20-21).

Ambrose's termination documents state he was terminated for driving with a cold and improper rest. (Ex **7**; Ex 3 p 2). Kreider believes that at JB Hunt discipline for driving with a cold is unprecedented. (Ex 2 pp 23-24). In addition, Kreider does not know of any JB Hunt employee ever being disciplined for driving while using Dayquil. (Ex 2 p 24). Phillips drove semi-trucks for about eight years and believes that driving with a cold is commonplace. (Ex 4 pp 9-11). Phillips does not believe that Defendant makes efforts to ferret out people driving with a cold. (Ex 4 p 11). Phillips is not aware of any truck driver, whether at Defendant or elsewhere, being disciplined for driving with a cold apart from Ambrose. (*Id.*).

Ambrose was terminated in part for allegedly inadequately resting prior to the accident. However, the decisionmakers' own testimony casts doubt on this. Kreider does not believe Ambrose was in violation of any DOT rest regulation. (Ex 2 p 24). Phillips and Kreider do

**Page 5 – Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion
For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL St. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

not know of any company policy that requires more rest than DOT requires. (Ex 2 p 25; Ex 4 p 14). Kreider states that no person told him that Ambrose had not rested properly; he made the determination to discipline based solely on the fact that Ambrose used Dayquil. (Ex 2 p 25). Phillips does not believe that the basis for the decision was that Ambrose had failed to properly rest. (Ex 4 p 12). There was no basis for determining that Ambrose had not rested properly other than speculation based upon his Dayquil use. (Ex 2 p 26-27). Phillips does not believe that using Dayquil alone would justify discipline for improper rest. (Ex 4 p 13). Phillips is not aware of any rule or regulation forbidding Dayquil use. (Ex 4 p 19). Phillips believes it would be unfair to infer that a driver improperly rested due to Dayquil use. (Ex 4 p 13).

Ambrose stated he had lost consciousness after coughing while driving and that he had been suffering from a head cold. (Ex 1 p 36). Nonetheless he explained that the ER physician told him that he had probably suffered a heart attack and that he was not cleared to drive until he consulted with a cardiologist. (Ex 1 p 44). Phillips believes that no one at the Review explored the possibility that something other than a cold caused Ambrose to black out. (Ex 4 p 15). Phillips believes that if he had known that Ambrose's blacking out was caused by a cardiac event, like a heart attack, he would have looked at the matter differently. (Ex 4 p 16). Phillips believes that if he had had information that Ambrose blacked out due to a cardiac event it would have changed his opinion. (Ex 4 p 15-16). Phillips inferred that because there was an accident Ambrose had improperly recognized his illness, and nothing apart from the fact that the accident occurred led him to conclude that the illness caused the accident. (Ex 4 p 18). Phillips believed Ambrose was injured very little but was hospitalized. (Ex 4 p 5). Kreider testified he had no reason to believe that Ambrose was not eligible to return to work. (Ex 2 p 29).

Phillips acknowledges that JB Hunt failed in its obligation to provide Ambrose with workers' compensation documentation. (Ex 4 p 8). Defendant did not file a workers' compensation claim for Ambrose until January 11, 2013, after Ambrose called Safety demanding they file a

**Page 6 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
info@salememploymentlawyer.com

claim. (Ex 1 p 42). Kreider is obligated to initiate a three-way call Safety with an injured worker

and put him in touch with the right department so he can file a claim. (Ex 2 p 18). Kreider only put

Ambrose in contact with Safety to take down Ambrose's statement; as "they were the one's

coordinating medical attention" for Ambrose. Kreider did not file a workers' compensation claim

for Ambrose, and to his knowledge none was filed on his behalf. (Ex 2 p 18-19). Phillips did not

provide Ambrose with the documentation necessary to file a workers' compensation claim. (Ex 4 p

5). Phillips believes that it is Kreider's obligation to provide employees with workers'

compensation documentation. (Ex 4 p 5). Phillips believes his only obligation is to oversee light-

duty or modified-duty work. (Ex 4 p 6). Phillips believes Defendant is obligated to provide drivers

with OFLA information and paperwork as soon as they discover that he is not going to return to

work within some number of days. (*Id.*). Phillips believes this obligation exists regardless of

whether a Review is conducted. (Ex 4 p 7). Ambrose was not provided with documentation

regarding OFLA leave. (Pl Dec ¶6). Ambrose had three syncopal episodes after being terminated

from JB Hunt. (Ex 1 p 27). Ambrose was released to full duty on April 12, 2012. (Ex 1 p 7).

## OBJECTIONS TO DEFENDANT'S STATEMENT OF FACTS

Defendant's Memorandum of Law contains irrelevant and unsupported factual assertions,

as well as inappropriate editorial comments, in an effort to confuse the issues. While Ambrose has

only moved to strike a portion of this evidence below, Ambrose requests that the other offending

evidence be given its proper weight in consideration of Defendant's motion.

| | OBJECTIONABLE MATERIAL | OBJECTIONS |
|---|---|---|
| 1. | Page 3: "Plaintiff never advised DOT … ." | **Inaccurate; lacks personal knowledge**: Defendant has no source of information based on competent testimony that Plaintiff did not inform the medical examiner, and the cited passage does not support the conclusion. |
| 2. | Page 4: "Plaintiff denied all other prior medical history to the DOT medical examiner." | **Lacks personal knowledge**: Toman does not have any recollection concerning Plaintiff's DOT medical examination; she cannot give |

**Page 7 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

| | | testimony concerning matters about which she has no personal knowledge. |
|---|---|---|
| 3. | Page 8: "…potentially deadly…." | **Irrelevant (FRE 401)**. |
| 4. | Page 8: "…Plaintiff did not know he had a medical condition…." | **Inaccurate**: the cited passage does not support this assertion; Plaintiff testified he had been informed he had a heart attack by the ER physician. |
| 5. | Page 8: "Plaintiff could not perform the essential functions … ." | **Legal conclusion; inaccurate**: Inappropriate legal conclusion unsupported by the cited material. |
| 7. | Page 13: " … (1) the 1999 syncope … ." | **Expert opinion (FRE 701); inaccurate**. Defendant has offered no expert testimony as foundation for the assertion that any prior incident was a "syncope." |
| 8. | Page 14: "In a transparent attempt … ." | **Irrelevant (FRE 401); inappropriate.** |

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Once the moving party does so, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id.* at 324. The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). The Court accepts the nonmoving party's version of the facts as true, and resolves any conflicts in his favor. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3rd Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). A "material" fact exists if there is a "dispute over facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id.* at 630-31.

**Page 8 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

## ARGUMENT

**I.**      **After-Acquired Evidence Doctrine**

Defendant's argument that the after-acquired evidence doctrine completely bars recovery is meritless. The only case law cited to support Defendant's position is a California case that neither analyzes Title VII nor a state-law equivalent and a New Jersey case involving public employment. These cases are inapposite and not controlling here. Indeed, the only controlling cases cited by Defendant support Plaintiff's position.

The after-acquired evidence doctrine holds that if a defendant-employer discovers, during litigation, evidence of conduct by an plaintiff-employee that would have supplied a nondiscriminatory reason for terminating the plaintiff-employee, the employer is entitled to limit backpay to the date of that discovery. *McKennon v. Nashville Banner Publ'g*, 513 U.S. 352, 360-62 (1995). *McKennon*, the one federal case cited in favor of Defendant's novel arguments, stands for the proposition that employment discrimination statutes further the policy objective of the "elimination of discrimination in the workplace" and that there should *not* be a total bar to recovery even if the employer discovers information that would have supplied a nondiscriminatory reason for terminating an employee. *McKennon*, 513 U.S. at 360. Indeed it stands for precisely the opposite position Defendant advocates. In *McKennon*, the 11th Circuit had ruled that McKennon's conduct was "supervening grounds for termination" and that such misconduct "render[ed] it irrelevant" whether or not McKennon was discriminated against. *Id.* The Supreme Court rejected this argument and ruled instead that given the important policy interests in eliminating discrimination, after- acquired evidence should only operate to cut off frontpay and reinstatement rights. *Id.* at 362 ("An absolute rule barring any recovery of backpay would undermine the ADEA's objective of forcing employers to consider and examine their motivations, and of penalizing them for employment decisions that spring from age discrimination.").

///

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

Defendant erroneously suggests that controlling case law leaves open the possibility that "courts remain free to set 'different boundaries of remedial relief' in other types of cases"—it is unknown what Defendant's quotation is from—such as "misrepresenting in the hiring process." (Docket #33, p 10). *McKennon* does not 'leave open' additional possibilities. By any fair reading, *McKennon* makes no such distinction between on-the-job misconduct and misrepresentations in the hiring process at all; the word 'misrepresentation' appears nowhere in *McKennon*. Defendant's argument misleads by suggesting that the quote "cases of this type" was intended to leave open the possibility that some other type of after-acquired evidence would bar recovery entirely. It does not.

The two other cases Defendant cites are simply inapposite. In *Camp v. Jeffer, Mangles, Butler & Marmaro*, 35 Cal. App. 4th 620 (Cal. App. 2d Dist. 1995), a California Court of Appeals case, plaintiffs (husband and wife) brought suit against their employer, a federal contractor, on the common law theory of wrongful termination. *Camp*, 35 Cal. App. 4th at 331-33. In discovery, Defendant discovered that plaintiffs failed to disclose fraud convictions on their applications. *Id.* Defendant moved for summary judgment and the court ruled that their misrepresentation barred recovery entirely. *Id.*, at 340. The *Camp* court took pains to state that while federal case law is instructive on issues of state employment law, California courts will "refer to federal decisions only "where appropriate.'" *Id.*, at 338. The court further distinguished *McKennon* by noting that in *Camp* plaintiffs' misrepresentation concerned a legal requirement (i.e. that its employees not be felons). Defendant cites to *Cedeno v. Montclair St. U.*, 750 A.2d 73 (N.J. 2000), for the proposition that a public employee who had lied about a prerequisite for public employment was barred from recovery. *Cedeno*, 750 A.2d at 75. Neither of the cited cases are controlling and both are in direct conflict with established U.S. Supreme Court precedent, which states that barring recovery entirely would undermine Title VII's policy objective of eliminating discrimination from the workplace. Despite the fact that their arguments are legally meritless, Defendant makes several statements and arguments that are factually incorrect and misleading and require response.

**Page 10 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

Defendant argues that Ambrose failed to disclose previous accidents and that if he had, he would not have been entitled to be employed by Defendant as a matter of DOT regulation. In support of this, Defendant makes much of Ambrose's 2009-accident. There, as he testified in his deposition, Ambrose was involved in a minor accident, which at the time aroused neither his nor his physician's suspicions that he was suffering from a cardiovascular disease accompanied by syncope. As he stated at the time, he had a cold, sneezed or coughed and looked up at the sun and was briefly disoriented. In the accident at issue here, Ambrose blacked out completely.

The remainder of Defendant's recitation is so misleading as to be rejected outright. Defendant suggests that Ambrose admitted to being dishonest and failing to disclose his medical history when his testimony at his deposition was clearly that he had informed the DOT medical examiner of the procedure he had been treated for (catheter ablation) and that they had passed him anyway. Defendant argues that Stephanie Toman ("Toman"), the nurse practitioner employed to conduct Ambrose's DOT medical examination, would not have cleared Ambrose if he had informed her of the catheter ablation; but her testimony is that she does not know if that would be a reason not to clear him. (Ex 5 p 13-14). Toman has no recollection of Ambrose or conducting an examination of him and her entire testimony was based upon documentation from the examination. (Ex 5 p 5-6). Thus, her statements about the exam were based on what she usually did. (Ex 5 p 4). She admits that she was new to conducting exams at the time she conducted this examination, and they were conducted in 8-15 minutes. (Ex 5 pp 10, 11-12). Even though she stated that the documentation is accurate and complete regarding all matters discussed with the examinee, she testified that on its face the documentation is in error with regards to at least one particular. (Ex 5 p 6-8). She testified that it is her practice to ask the examinee if he had other medical history that was relevant. (Ex 5 p 2-3). Toman states that that if additional or clarifying information regarding the examinee's health history is discussed, she has the examinee change that portion of the health history documentation. However, she admits that in this instance additional information regarding

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

Ambrose's health history arose but she did not have Ambrose change the documentation. (Ex 5 p 8-9). Her entire deposition is based upon an exhibit she admits is not accurate.

Ambrose admitted that he had not checked the box labeled "surgery" on his medical history questionnaire because he did not believe the catheter ablation was a surgery. The examiner did not explain what the term surgery meant for the purposes of the examination (Ex 5 p 4). Since his catheter ablation, Ambrose has undergone three DOT medical examinations and was cleared by all of them after providing his history. (Pl Dec ¶11). Defendants have produced no evidence that Ambrose was dishonest in any medical examination. Ambrose currently drives commercial trucks after passing an April 18, 2013 DOT examination. (Pl Dec ¶12). Given that Ambrose has repeatedly disclosed his history to physicians and examiners (e.g. the 2005 incident), and the fact that his disclosures did not prevent him from being cleared to drive, Ambrose had no motivation to conceal the 2009-accident would be. Defendant indulges in irrelevant speculation concerning what may have happened if Ambrose had disclosed the information. This testimony, as discussed above, should be dismissed as irrelevant. Indeed, Defendant's counterfactuals show there is a genuine issue of material fact whether Ambrose disclosed this information to his medical examiner. Defendant's own declarant, Dr. Moffitt, casts doubt on Defendant's entire argument. Dr. Moffitt speculates he *likely* would not have certified Ambrose to drive had he known his history. (Docket #33, p 23). By this very statement, he may have certified him to drive. Even assuming that Defendant's cases were relevant or controlling, the facts marshaled in its favor are either inaccurate or disputed by Ambrose. It would therefore be inappropriate to grant summary judgment in favor or Defendant on the basis of after-acquired evidence.

///

///

///

///

**Page 12 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
info@salememploymentlawyer.com

## II.    Interference with Oregon Family Leave Act

### 1.    Defendant failed to inform Plaintiff of his rights under Oregon's Family Leave Act.

"It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements. DOL regulations state that 'the employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." *Xin Liu v. Amway Corp.*, 347 F 3d 1125, 1134 (9th Cir. 2003) (internal citation omitted); 29 C.F.R. §825.302(c). Defendant admits it failed to inform Ambrose of the availability of OFLA leave.

### 2.    Defendant interfered with Plaintiff's rights under OFLA

In order to prevail on his OFLA claim, Ambrose must demonstrate that 1) he was eligible for OFLA's protections, 2) Defendant was a covered employee, 3) he was entitled to leave under OFLA, 4) he provided sufficient notice and 5) whether Defendant denied him OFLA leave or interfered with his OFLA rights. *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). JB Hunt interfered with Ambrose's OFLA rights by terminating his employment before he was able to enjoy those rights.

### A.    Plaintiff suffered damages as a result of Defendant's conduct

Defendant argues that Ambrose's OFLA claim fails because Ambrose cannot prove damages arising from Defendant's unlawful interference with his OFLA rights. The reason for this, Defendant argues, is simply that Ambrose was not released to drive until after the 12 weeks would have been exhausted. For this proposition, Defendant cites to two cases interpreting FMLA: *Edgar v. JAC Products, Inc.*, 443 F.3d 501 (6th Cir. 2006) and *Santrizos v. Evergreen Fed. Savings & Loan Ass'n*, 2007 U.S. Dist. 84819, *17 (D.Or. Nov. 14, 2007). These cases are inapposite to this case for two reasons: 1) they are federal cases interpreting FMLA rather than OFLA and thus are not controlling precedent; and 2) even assuming that this Court found the arguments contained in

**Page 13 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

those cases persuasive in interpreting OFLA, under Defendant's handbook, Ambrose was entitled to six (6) weeks of personal leave, placing Ambrose's release date (the third week in April) within the time permitted for leave. (Ex 8). Thus Ambrose would have been able to aggregate his personal leave and OFLA leave under the handbook and the circumstances discussed in the cases cited above would not apply to the present matter.

**B.    Plaintiff suffered from a serious health condition**

Apparently Defendant argues that Ambrose who suffered from three episodes of syncope, had a heart attack, and underwent three hospitalizations, including one where he had a pacemaker implanted, did not suffer from a serious health condition. Defendant cites to OAR 839-009-0210(20) for the proposition that the incapacity must involve two or more treatments or a regimen of continuing care. As identified in his deposition Ambrose underwent the aforementioned procedures and continues to take Lopressor, Lupin, Plavix and aspirin daily to treat his heart condition from which he suffered in 2011 causing the accident. (Pl Dec ¶14). Ambrose has repeatedly visited with physicians regarding his condition. Defendant's arguments cannot be taken in good faith and are meritless. A serious health condition caused Ambrose to black out while driving; it is difficult to understand how Defendant can contend otherwise. Ambrose was eligible for OFLA leave in January 2011, and Defendant's interference with those rights violated OFLA.

**III.    Plaintiff's Disability/Perceived Disability Claims**

Ambrose has claims under Oregon law for disability discrimination, retaliation, and failure to accommodate. Defendants have moved for summary judgment on Ambrose's disability claim.

ORS 659A.112 provides that, "It is an unlawful employment practice for any employer to refuse to hire, employ, or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because an otherwise qualified person is disabled." ORS 659A.112-139 are construed to the extent possible in a manner consistent

///

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804 (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

with similar provisions of the federal Americans with Disabilities Act (ADA) of 1990. ORS 659A.

139; *Evans v. Multnomah Cnty. Sheriff's Office*, 184 Or.App. 733, 740, 57 P.3d 211 (2002).

Ambrose may recover for a claim of employment disability discrimination under Oregon

state law in five separate ways: 1) by showing that he was subjected to disparate treatment based

on his disability; 2) by showing that defendant failed to engage in the interactive process; 3) by

showing that defendant failed to accommodate his disability; 4) by showing that defendant

retaliated against him for requesting reasonable accommodation for his disability; and/or 5) by

showing that defendant subjected plaintiff to a hostile work environment. *Snead v. Metro. Prop. &

Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir.), *cert. denied*, 534 U.S. 588 (2001); *Barnett v. U.S. Air*,

228 F.3d 1105, 1113 (9th Cir. 2000) *overruled on other grounds by* 535 U.S. 391 (2002); ORS

659A.109; ORS 659A.112; OAR 839-006-0200. Ambrose can show that he was discriminated

against in four of these ways: retaliation, disparate treatment, failure to reasonably accommodate,

and retaliation for requesting reasonable accommodation.

### 1.    Disparate Treatment

The standard for establishing a prima facie case of discrimination under Oregon law is

identical to that used in federal law. *Snead*, 237 F.3d at 1087, *citing Henderson v. Jantzen, Inc.*, 79

Or.App. 654, 719 P.2d 1322, 1323-24 (1986). To establish a prima facie case of disparate

treatment under Oregon law, Ambrose must show that he: (a) is disabled; (b) is qualified; and (c)

suffered an adverse employment action because of his disability. *Id*.

### A.    Plaintiff is Disabled

Ambrose must provide evidence that he is "disabled" as that term is defined by the ADA

and Oregon statute. There are three different definitions of "disability" recognized under the ADA

and Oregon statute: (1) a person can be actually disabled; or (2) have a record of such impairment;

or (3) be regarded as having an impairment. *See* 42 U.S.C. §12102(2); *Snead*, 237 F.3d 1080 at

1087. Ambrose is disabled under all three definitions.

**Page 15 – Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion
For Summary Judgment**

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

### (i)    *Plaintiff is Actually Disabled*

In order to show he is "disabled," Ambrose must establish that he has a physical or mental impairment which substantially limits one or more major life activities. 42 U.S.C. §12102(2)(A); ORS 659A.104. "When determining whether an impairment substantially limits a major life activity of an individual, the determination shall be made **without** regard to the ameliorative effects of mitigating measures" OAR 839-006-0212(1) (emphasis added). "Major life activity" includes, but is not limited to, ambulation, working, standing, lifting, reaching, speaking, seeing, breathing, sleeping, and performing manual tasks. OAR 839-006-0305. "Substantially limits" means that a person is: (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. §1630.2(j); ORS 659A.104; OAR 839-006-0305. Working is a major life activity. 29 C.F.R. §1630.2(h)(2)(I); ORS 659A.100(2)(a). In the context of working, "substantially limits" means an individual is significantly restricted in his ability to perform either a class of jobs or broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. OAR 839-006-0205(6)(b); 29 C.F.R. §1630.2(j)(3)(I). In *Evans* court, held that a reasonable fact-finder could infer that plaintiff's condition requiring that he avoid activities that might cause physical trauma, rendered "him unable to perform many jobs in, for example, the construction, maintenance, law enforcement, and manufacturing fields that an average person of like skill and experience would be able to perform." 184 Or.App. at 738. The Court further held that a reasonable fact-finder could conclude that those amount to "a class of jobs or a broad range of jobs in various classes." *Id*.

Whether a physical or mental impairment substantially limits one or more major life activities, and thus whether an individual is disabled, is a question for the jury. *Daoud v. Avamere*

**Page 16 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804 (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

*Staffing, LLC*, 336 F.Supp.2d 1129, 1134-35 (D.Or. 2004); *Dadian v. Village of Willamette*, 269

F.3d 831 (7th Cir. 2001). A plaintiff's testimony alone may be enough to present sufficient

evidence for a reasonable jury to conclude plaintiff is disabled. The Supreme Court has held "that

to be substantially limited in performing manual tasks, an individual must have an impairment that

prevents or severely restricts the individual from doing activities that are of central importance to

most people's daily lives," and that the impairment's impact be "permanent or long term." *Toyota*

*Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681 (2002). The Supreme Court

went on to explain "the ADA requires those 'claiming the Act's protection...to prove a disability by

offering evidence that the extent of the limitation [caused by their impairment] in terms of their

own experience...is substantial.'" *Toyota*, 534 U.S. 184, 198, *citing Albertson's, Inc. v.*

*Kirkingsburg*, 527 U.S. 555, 567 (1999). The Court held that whether a person has a disability

under the ADA requires "an individualized assessment of the effect of an impairment is

particularly necessary when the impairment is one whose symptoms vary widely from person to

person." *Toyota*, 534 U.S. at 198-99.

      The Ninth Circuit does not require comparative or medical evidence to establish a genuine

issue of material fact regarding the impairment of a major life activity at the summary judgment

stage. *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005). The Ninth Circuit held that a

plaintiff's testimony alone may suffice to establish a genuine issue of material fact for the

factfinder. *Head*, 413 F.3d at 1058 (internal citations omitted).

      After Ambrose's medical episode causing the December 30, 2011 accident, without

treatment, he had difficulty breathing, sleeping, walking, and working as a result of his heart

condition. Specifically, he had persistent shortness of breath. When he walked longer than 5-10

minutes, he would be out of breathe and could feel his heart rate increasing rapidly. He was

unable to work driving a vehicle until he had a pacemaker implanted and a right coronary stint

and was suffering from sleep apnea diagnosed in October 2011. (Pl Dec ¶7). Ambrose was

**Page 17 – Memorandum of Law in Support of**
**Plaintiff's Response to Defendant's Motion**
**For Summary Judgment**

prevented from performing a broad class of jobs because of his heart condition. At the time of his termination, Ambrose could not perform any job that requires use of a motor vehicle. (Pl Dec ¶8). By Defendant's own admission without medical treatment, Ambrose was not able to drive without a pacemaker, which was installed in April 2012. (Docket #33, p. 9). A reasonable jury could conclude that a Brady Cardiac syncope and related heart condition is a disability.

> (ii)   *Defendants Regarded Plaintiff as Substantially Limited in Major Life Activities*

Ambrose can prove he is "disabled" under the ADA and Oregon statute by meeting the "regarded as" definition of disability. 42 U.S.C. §12102(2)(c). The EEOC regulations addressing this category of disability define an individual who "is regarded as having such an impairment" as one who: (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or (3) has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment. 20 C.F.R. §1630.2(1) (2001). Oregon's definition of "regarded as" is identical. ORS 659A.100(2)(c). Because Ambrose is regarded as being disabled, he satisfies the first element of his prima facie case for disparate treatment discrimination. *Roberts v. Dimension Aviation*, 319 F.Supp.2d 985, 988 (D.Ariz. 2004).

Defendants regarded Ambrose as disabled. Ambrose informed Safety that a physician had determined that he could not drive until he was cleared by a cardiologist. (Ex 9). Ambrose informed Kreider, that he could not drive until he was cleared by a cardiologist. (Pl Dec ¶10).

### B.   Plaintiff is a Qualified Individual

The second element of a prima facie case of disability discrimination under Oregon law is Ambrose must show that he is a qualified individual. The ADA defines a "qualified individual" as

Page 18 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
info@salememploymentlawyer.com

"an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Johnson v. The Evangelical Lutheran Good Samaritan Soc'y*, 2005 WL 2030834, *13 (D.Or. 2005), *citing* 42 U.S.C. 1630.2(n)(1). The relevant position(s) that need to be considered consist of the specific assignments the employee requested. *Evans*, 184 Or.App. at 216.

The definition of an "otherwise qualified" employee is similarly defined by Oregon law as an employee who, "with or without reasonable accommodation, can perform the essential functions of the position." ORS 659A.115. OAR 839-006-0205(4)(a) defines "essential functions" as the "fundamental duties of a position a disabled person holds or desires." This OAR also lists reasons that a job function may be essential: "(A) The position exists to perform that function; (B) A limited number of employees are available to carry out the essential function; or (C) The function is highly specialized so that the position incumbent was hired for the expertise or ability required to perform the function." OAR 839-006-0205(4)(a).

The question of whether a disability renders an employee not "otherwise qualified" is a question of fact for the jury. *Evans,* 184 Or.App. at 744, *citing Anglin v. Dep't of Corr.*, 160 Or.App. 463, 475 n.10, *rev. den.*, 329 Or. 547. Ambrose performed the essential functions of a driver, i.e. driving truck, before and after the accident. He is a qualified individual. (Ex 1 p 6).

### C.    Plaintiff Suffered Adverse Employment Actions

It is uncontroverted that Ambrose suffered an adverse employment action. Termination is an adverse employment action. *Snead*, 237 F.3d 1080 at 1089. The adverse employment action must have been taken because of Plaintiff's disability. *Id.* Evidence that permits an inference of discrimination is sufficient for Plaintiff to make a prima facie case that he was discriminated against because of his disability. *Id.* In *Snead*, the court held that the time of Snead's termination, coupled with her disability history and her communications with Defendant provided sufficient evidence to raise a genuine issue of material fact as to whether she was subjected to an adverse

**Page 19 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

employment action because of her disability. *Id.* at 1090. Ambrose was subjected to adverse employment actions. Ambrose was not offered light duty or other work that would not have required him to drive. **(**Ex 1 p 40**)**. Ambrose was terminated summarily on January 5, 2012, after he informed his supervisors that he was grounded by his physician and that he needed to seek treatment from a cardiologist prior to returning to work (*Id.*).

Ambrose has met the prima facie case of disparate treatment under Oregon law. Ambrose has shown he is disabled under all three of the definitions of the term. Ambrose was a "qualified" individual as that term is defined by Oregon law. Finally, Ambrose has shown he was subjected to an adverse employment action.

### D.   Defendants' Proffered Reasons are Pretextual

Under federal law, once Ambrose has presented a prima facie case, the *McDonnell-Douglas*, burden-shifting framework applies. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50, 124 S.Ct. 513 (2003); *Snead*, 237 F.3d 1080 at 1093. Once established, the prima facie case creates a rebuttable "presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1981). Under *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), after Ambrose establishes a prima facie case of discrimination, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct; if Defendant provides such a reason, the burden shifts back to Ambrose to show Defendant's reason is a pretext for discrimination. *Vasquez v. County of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003); Civil Rights Act of 1964, §701 *et seq., as amended*. For Defendant to meet its burden of production, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's treatment." *Burdine,* 450 U.S. at 255. The final burden shift does not necessarily impose a new burden of production by Ambrose. In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000), the Supreme Court held that the factfinder may infer "the ultimate fact

of intentional discrimination" without additional proof once plaintiff has made out his prima facie case if the factfinder believes that the employer's proffered nondiscriminatory reasons lack credibility. *Id.* at 147. In the Ninth Circuit, a plaintiff can prove pretext either; "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. U. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000). A plaintiff does not have to introduce additional evidence of discrimination at the pretext stage. *Id.* In the instant case, Ambrose was involved in an accident after coughing and passing out. Ambrose's physician immediately grounded him and determined that Ambrose would not be able to drive until he saw a cardiologist. Nucci, Kreider and Corporate Safety were aware that Ambrose needed to see a cardiologist before he could continue driving and Ambrose informed Kreider that he had made an appointment with a cardiologist for later that week. Kreider quickly proceeded with the Review and terminated Ambrose. Phillips stated that if he had been aware that Ambrose was scheduled to see a cardiologist he would have decided the Review differently. Defendant deleted all of the emails between Kreider, Phillips, Nicholson and Corporate Safety. At the time, Defendant had notice of "potential relevance to the litigation." *Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993), citing *Akiona v. U.S.*, 938 F.2d 158, 161 (9th Cir. 1991) "[A] trial court …has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior. *Akiona*, 938 F.2d at 161. *Unigard v. Lakewood*, 982 F.2d 363, 368-70 & n. 2 (9th Cir.1992) (a finding of "bad faith" is not a prerequisite to this corrective procedure). Exhibit 9, page 4 clearly evidences Defendant's notice yet Defendant destroyed documents relevant to the litigation.

    Kreider stated that he never heard from Ambrose that he needed to be cleared by a cardiologist before returning to work. However, Nicholson stated that in his deposition that he had heard from Kreider that Ambrose needed to be cleared by a physician before returning to work.

**Page 21 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

Kreider's dishonesty on this point is evident: Nicholson had no incentive to lie regarding the statement from Kreider but Kreider evidently felt or was told that disclosing the fact that he was aware of the need for Ambrose to be cleared by a cardiologist was incriminating. Not only does Kreider's dishonesty suggest that he was concealing his true motives for terminating Ambrose's employment, but it also calls into question the remainder of his testimony.

The stated reasons for Ambrose's termination were he "failed to recognize [his] illness" and "improperly rested" in violation of DOT policy. (Ex 6). Both Kreider and Phillips stated that the only evidence for their decision to discipline Ambrose was his Dayquil use. However, Kreider and Phillips gave testimony inconsistent with this determination. Phillips does not believe that there is any rule which prohibits driving with a cold; he has never disciplined any driver for using Dayquil. (Ex 4 pp 3-4). Neither Kreider nor Phillips are aware of an employee being disciplined for driving with a cold other than Ambrose. (Ex 4 pp 4, 11; Ex 2 pp 23, 24). Kreider knows of no JB Hunt employee being disciplined for driving while using Dayquil. (Ex 2 p 24). Phillips believes Defendant makes no effort to discover whether drivers are driving with a cold. (Ex 4 p 11).

With respect to whether Ambrose rested for the DOT-required amount of time, Kreider does not believe Ambrose was in violation of any DOT rest regulation, and neither Phillips nor Kreider believe that company policy requires more rest than is required by DOT. (Ex 2 p 25; Ex 4 p 14). Kreider states no person told him that Ambrose had not rested properly. (Ex 2 p 25). Significantly, Phillips did not believe that the basis for the decision was Ambrose failing to properly rest. (Ex 4 p 12). Kreider admits there was no basis for determining that Ambrose had not rested properly other than speculation based upon his Dayquil use. (Ex 2 p 26-27). Phillips does not believe that using Dayquil alone would justify discipline for improper rest or that any regulation forbids the use of Dayquil. (Ex 4 pp 13, 19). Phillips believes that it would be unfair to infer that due to using Dayquil a driver improperly rested. (Ex 4 p 13). The disparity between the written reasons for Ambrose's discipline and the testimony of the decision-makers, taken together

**Page 22 – Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion
For Summary Judgment**

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
info@salememploymentlawyer.com

with the close proximity of time between Ambrose's protected activity and his discipline, shows

that Defendant's reasons for terminating Ambrose were pretextual.

### 2.       Defendants Failed to Engage in the Interactive Process

Defendant discriminated against Ambrose violating ORS 659A.112 by failing to engage in

the interactive process. Defendant has an affirmative duty to engage in the interactive process.

OAR 839-006-0206(4) ("[T]he employer has a duty to initiate a meaningful interactive

process…."). "An employer should initiate the interactive process without being asked if the

employer: (1) knows that the employee has a disability, (2) knows, or has reason to know, that the

employee is experiencing workplace problems because of the disability, and (3) knows, or has

reason to know, that the disability prevents the employee from requesting a reasonable

accommodation." *Barnett*, 228 F.3d at 1112. The burden of persuasion in proving inability to

accommodate always remains on the employer. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th

Cir.1985). If it is determined that defendant did not engage plaintiff in the interactive process to

assist in identifying possible accommodations, the employer bears the burden of persuasion to

show that no reasonable accommodation was available. *Bates v. Utd. Parcel Serv.*, 2004 WL

2370633 (9th Cir. 2004); *citing Morton v. Utd. Parcel Serv.*, 272 F.3d 1249, 1256 (9th Cir. 2001),

*cert. denied sub nom.*, 535 U.S. 1054 (2002). The interactive process requires that employers

analyze job functions to establish the essential and nonessential job tasks. In order to identify the

barriers to job performance, employers must consult and cooperate with disabled employees so that

both parties discover the precise limitations and the types of accommodations which would be

most effective. Evaluation of proposed accommodations requires further dialogue and an

assessment of the effectiveness of each accommodation in terms of enabling the employee to

successfully perform the job. *Barnett*, 228 F.3d at 1115, *citing*, 29 C.F.R. Pt. 1630, App. §1630.9.

Employers who fail to engage in the interactive process in good faith, face liability for the remedies

imposed by the statute if a reasonable accommodation would have been possible. *Id*. at 1116.

**Page 23 – Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion
For Summary Judgment**

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
info@salememploymentlawyer.com

Defendants had a duty to engage in the interactive process because they were made aware that Ambrose was disabled. Ambrose informed his supervisor and the Corporate Safety department that he needed to be cleared by a cardiologist prior to returning to work. (Ex 1 p 44; Ex 9). Defendant did not engage in an interactive process with Ambrose despite the fact that Ambrose repeatedly requested accommodation. (Ex 1 p 40). When Ambrose spoke to Kreider by telephone on January 5, 2011, Kreider stated that "if you can't drive you don't work here." (*Id.*). Defendant did not offer any light duty work to Ambrose. (*Id.*). In addition, there was another reasonable accommodation available. Defendant could have allowed Ambrose to take the 12 weeks for medical leave he was allowed under OFLA and the six weeks he was allowed under its own policy. "Reasonable accommodation of a qualified employee or applicant with a disability may include, but is not limited to: … (f) Providing a leave of absence[.]" OAR 839-006-0206(2).

 If they followed their own policy and the law Ambrose, would have been reasonably accommodated. Defendants clearly failed to engage in the interactive process as required under the ADA and Oregon statute. At the very least, a genuine issue of material fact exists as to whether Defendant's properly engaged this process and summary judgment is improper.

### 3.    Defendants failed to Provide Plaintiff with Reasonable Accommodation

In addition to subjecting Ambrose to disparate treatment and failing to engage in the interactive process, Defendant violated the ADA and Oregon statutory law by failing to accommodate Ambrose's disability. An employer discriminates against an employee by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. 42 U.S.C. §12112(b)(5)(A). In failure to accommodate claims, unlike disparate treatment claims, the *McDonnell-Douglas* burden-shifting approach is not

**Page 24 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

Law Office of Larry L. Linder, LLC
2245 Commercial St. NE
Salem, OR 97303
(T)(503)585-1804  (F)(503)585-1834
info@salememploymentlawyer.com

necessary or appropriate. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001); *citing Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir.1997).

Under ORS 659A.112(2)(e), an unlawful employment practice occurs if an employer, "does not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled person...unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." Whether an employer has met its burden to reasonably accommodate an employee is ordinarily a question of fact for the jury. *Anglin*, 160 Or.App. at n.10. An employee who is claiming disability discrimination has the initial burden of proving that a reasonable accommodation exists, giving rise to the employer's duty to prove undue hardship. *Honstein v. Metro West Ambulance Serv., Inc*., 193 Or.App. 457, 462 (2004).

A reasonable accommodation existed for Ambrose and Defendants failed to provide it. Ambrose would have been entitled under the Employee Handbook to six weeks of personal time off or a lesser amount of time in addition to the 12 weeks he was entitled to under OFLA. If Ambrose had been given this time to receive the medical treatment he needed (i.e. having a pacemaker installed) he would be cleared to drive by his cardiologists as he is today. (Pl Dec ¶13). Defendant did not offer Ambrose personal time off which is open to all employees regardless of medical need. (Ex 8). Defendants failed to provide Ambrose with reasonable accommodation which existed and was available. Further, Defendant has made no showing of undue hardship. Ambrose requests that Defendants' motions for summary judgment be denied.

### 4.    Defendants Retaliated Against Plaintiff for Engaging in Protected Activity

Ambrose has shown that Defendant discriminated against him by subjecting him to disparate treatment based on his disability, failed to engage in the interactive process, and failed to reasonably accommodate Ambrose's known disability. Lastly, Defendant discriminated against Ambrose and violated Oregon statute by retaliating against Ambrose for requesting reasonable

**Page 25 – Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion
For Summary Judgment**

accommodation. Under Oregon law "it is an unlawful employment practice for an employer, labor organization, or employment agency to 'discharge, expel or otherwise discriminate' against any person who has opposed any unlawful employment practice, or has "filed a complaint, testified or assisted in any proceeding" under ORS chapter 659A or attempted to do so." ORS 659A.030(1)(f); *see also* ORS 659A.112.

A prima facie case of disability retaliation, requires Ambrose to show: 1) he engaged in or was engaging in protected activity, 2) the employer subjected him to an adverse employment decision, and 3) that there was a causal link between the protected activity and the employer's action. ORS 659A.112; *Barnett*, 228 F.3d at 1113; *see also*, *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840 (9th Cir. 2004). Once a prima facie case is established, the burden then shifts to defendant to come forward with legitimate, non-discriminatory reasons for its actions that negate the inference of retaliation. *Id*. The plaintiff must then raise a genuine issue of fact to suggest that the employer's proffered non-discriminatory reasons are a pretext to mask retaliation. *Id*.

Ambrose notified Defendant of his medical condition and requested reasonable accommodation. (Pl Dec ¶10; Ex 1 pp 40, 41). Pursuing one's rights under the ADA constitutes a protected activity. *Pardi*, 389 F.3d at 850. Defendant retaliated against Ambrose for engaging in protected activity.

Although the stated reasons for Ambrose's termination was that he had "failed to recognize [his] illness" and that he had "improperly rested" and that these alleged infractions violated DOT policy, both Kreider and Phillips' testimony is inconsistent with this determination. Phillips does not believe that there is any rule prohibiting driving with a cold; he has never disciplined any driver for using Dayquil. Neither Kreider nor Phillips are aware of any employee ever disciplined for driving with a cold other than Ambrose. Phillips testified that driving with a cold is commonplace and that Defendant does not make any effort to discover whether drivers are driving with a cold.

///

**Page 26 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

With respect to whether Ambrose rested for the legally required amount of time, Kreider does not believe Ambrose was in violation of any DOT regulation regarding rest, and neither Phillips and Kreider believe that company policy requires more rest than that required by DOT. Kreider admits that there was no basis for determining that Ambrose had not rested properly other than speculation based upon his Dayquil use. Phillips does not believe using Dayquil alone justifies discipline for improper rest or that any regulation forbids Dayquil use. The disparity between the written reasons for Ambrose's discipline and the testimony of the decision-makers, taken together with the close proximity of time between Ambrose's protected activity and discipline, shows that Defendant's reasons for terminating Ambrose were pretextual.

## IV.    Workers' Compensation Discrimination

### 1.    Plaintiff Has Stated A Prima Facie Case Of Workers' Compensation Discrimination

Defendant argues that Ambrose has failed to state a prima facie claim for workers' compensation discrimination. In order to state a prima facie claim for injured worker discrimination, "a plaintiff must show that 1) he invoked the workers' compensation system; 2) he was discriminated against in the tenure, terms or conditions of his employment; and 3) the discrimination was caused by the employee's invocation of workers' compensation." *Shepard v. City of Portland*, Civil No. 09-0021-AA, *36 (D.Or. Oct. 20, 2011); *see also* Oregon UCJI No. 58.01. It is uncontroverted that Ambrose has satisfied the second element; Defendant argues that Ambrose has failed to prove the first and third element.

### A.    Plaintiff invoked the workers' compensation system

Defendant argues that because the heart condition Ambrose complained of was "idiopathic"—that is, "peculiar to the individual"—that the injuries Ambrose reported were non-compensable and therefore Ambrose did not "invoke" the workers' compensation system. The only argument that Defendant could make that he did not invoke workers' compensation system, is

**Page 27 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

that they did not understand he was performing job duties for Defendant when the accident occurred while driving its truck from California to Portland on the return trip of his route that they gave him. This argument is in error for two reasons: (1) whether Ambrose's on-the-job injury was ultimately deemed compensable is irrelevant to whether Ambrose invoked the workers' compensation system, and (2) compensability is irrelevant, but if it was, Oregon case law clearly holds that Ambrose's accident was compensable. These two issues are taken in turn.

<em>(i)    Plaintiff reported on-the-job injuries</em>

It is an unlawful employment practice for "an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws." ORS 659A.040. BOLI promulgated OAR 839-006-0105(2), which defines the term "invoke" as including "a worker's reporting of an on-the-job injury or a perception by the employer that the worker has been injured on the job or will report an injury." *McPhail v. Milwaukee Lumber Co.*, 999 P.2d 1144, 165 Or.App. 596 (2000). The *McPhail* court adopted BOLI's interpretation as controlling. *McPhail*, 999 P.2d 1144.

Here, as noted in both parties' recitation of the facts, Ambrose reported to his supervisors that he was involved in a "serious" accident while working that resulted in injuries to his person and necessitated that he be hospitalized. Defendant retained the services of a casualty investigator, in part, to determine the extent of Ambrose's injuries. The investigator interviewed Ambrose extensively, for the self-evident purpose of gathering information for later use in legal proceedings that might arise from the case, especially a workers' compensation claim. (Ex 9). Kreider put Ambrose in contact with Safety for the purpose of taking down Ambrose's statement; as "they were the one's coordinating medical attention." (Ex 2 p 18-19). Ambrose further informed his supervisors that he was not able to drive unless cleared by a cardiologist. As these facts make clear, Ambrose reported an on-the-job accident that resulted in his hospitalization. Defendant was aware

that Ambrose suffered injuries and that the true extent of his injuries would not be discovered until he consulted with a cardiologist. Kreider believed Ambrose was injured and dispatched an investigator in anticipation of a workers' compensation claim. Since there can be no question that (a) Ambrose reported on-the-job injuries, (b) Defendant regarded Ambrose as injured, and (c) Defendant believed Ambrose would file a workers' compensation claim, Ambrose invoked the workers' compensation system. In fact, Defendant had an obligation to provide workers' compensation paperwork to Ambrose that it failed to do. Phillips acknowledges that JB Hunt failed in its obligation to provide Ambrose with workers' compensation documentation. (Ex 4 p 8).

*(ii)    Although irrelevant, Ambrose's injuries were compensable*

Defendant alleges that Ambrose's injuries from the accident were not compensable because they were "idiopathic" as a basis for defeating Ambrose's claim. Defendant cites to *In re Hamilton*, 256 Or.App. 256, 262 (2013), for the proposition that idiopathic injuries are not compensable under Oregon's workers' compensation scheme. Defendant's argument is irrelevant. The compensability of Ambrose's injuries is not relevant to a determination of whether Ambrose invoked worker's compensation. The determination of compensability is determined well after an employee invokes workers' compensation by notifying the employer of the injury and/or filing a claim. After invoking the workers' compensation system, a claims process determines the compensability of the injury. There is no requirement under ORS 659A.040 that the claim be compensable, only that the invocation of rights be made. The Oregon Court of Appeals has determined that invocation occurs by, "a worker's reporting of an on-the-job injury or a perception by the employer that the worker has been injured on the job or will report an injury." *McPhail*, 999 P.2d 1144. This is in stark contrast to a claim under ORS 659A.043 and ORS 659A.046 for reinstatement that requires compensability. It is clear based upon the plain meaning of the statute and Oregon case law that the legislature intended and the courts have interpreted that intention to not require compensability under ORS 659A.040.

**Page 29 – Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion
For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

Even assuming this Court finds it is necessary to demonstrate that Ambrose's injuries were compensable in order to show that he invoked the workers' compensation system, Defendant's argument is without merit as discussed below. As a preliminary note, Ambrose filed for and received workers' compensation benefits for injuries resulting from this accident evidencing that his injuries were compensable. Further, Defendant's reliance on *Hamilton* is placed. The issue in *Hamilton* is paradigmatic of compensability of 'idiopathic injury' cases. There, the claimant was injured in a fall that occurred at ground level while walking on the floor of the shop. *Hamilton*, 256 Or.App. at 257. The court held that "[t]here was no evidence that work-related conditions caused or contributed to her fall, and claimant conceded that her fall was idiopathic." *Id.* at 261. The court reasoned that claimant's fall to the ground would have occurred regardless of whether she was at work; her being at work did not present any increased risk of injury. *Id.* at 262. The court distinguished the circumstances of a person falling as a result of a condition peculiar to that individual, from cases where the nature of the work in which the claimant is employed presents a risk over and above the risk presented elsewhere. In *Hamilton*, the court cites to *Marshall v. Bob Kimmel Trucking*, 109 Or.App. 101, 817 P.2d 1346 (1991), a case presenting facts nearly identical to those of this case. There,

> Claimant was injured in a single vehicle accident when the log truck that he was driving ran off the road and overturned. He recalls nothing between the time when he passed a scaling station and the time when he woke up in the wreckage of his truck one and one-half miles down the highway. He suffered a broken left hand, knee injuries and a concussion. At the hospital, claimant speculated that he had fainted due to a new medication that he was taking for hypertension and headaches.

*Marshall*, 109 Or.App. at 103, 817 P.2d 1346. In *Marshall*, as in this case, the employer argued "previous cases involving injuries sustained in unexplained falls at workplaces were controlling." *Id.* But the court found these cases inapposite. *Marshall*, 109 Or.App. at 103-04. Instead the court relied upon the treatise Larsen on Workers Compensation,

> Awards are uniformly made when the employee's idiopathic loss of his faculties took place while he was in a moving vehicle * * *. It seems obvious that the obligations of

Page 30 – Memorandum of Law in Support of
Plaintiff's Response to Defendant's Motion
For Summary Judgment

their employment had put these employees in a position where the consequences of blacking out were markedly more dangerous than if they had not been so employed.

*Id.* (citing 1 Larson, Workmen's Compensation Law 3-356, §12.12 (1990)). In adapting this argument, the court aptly observed

> That distinction makes sense. Claimant's injuries are not the results of a fall but, rather, of the impact of his log truck with the side of a mountain. The risk of serious injury from any loss of consciousness, of idiopathic origin or not, was greatly increased by the fact that claimant was driving a log truck for his employer's benefit. We conclude that the injuries arose out of and in the course of his employment and are compensable.

*Marshall*, 109 Or.App. at 104.

The issue in this case is the same: whether Ambrose's injuries were idiopathic is not the controlling inquiry; it is whether the work he performed for his employer's benefit presented an increased risk of injury. Here the semi-truck driving in which Ambrose was employed by Defendant clearly presented an increased risk of injury, and his resulting injuries were compensable. Since Defendant's injuries were compensable, even assuming such a showing were necessary, Ambrose's having reported these injuries to Defendant constitute invoking the workers' compensation system under the statute.

> **B.    Ambrose has established a causal link between his invocation of workers' compensation system and Defendant's discriminatory conduct**

Defendant's only argument that Ambrose has failed to show the causal link between his invocation of the workers' compensation system and Defendant's discriminatory conduct, is that because Ambrose did not invoke the workers' compensation system, he failed to show a causal link. Although Defendant fails to make any further cogent argument how Ambrose has failed to show the requisite causality for this claim, Ambrose will address evidence creating a question of fact regarding a causal link between Defendant's conduct and Ambrose's protected activity.

For the purposes of making a prima facie case, causation may be inferred from circumstantial evidence, such as "the employer's knowledge that the plaintiff engaged in protected

**Page 31 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *see also Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir. 1986). Ambrose informed Defendant of the accident that occurred while working and that he was being transported to the hospital for care. Within hours after receiving medical care, Ambrose informed Defendant that Ambrose was not cleared to drive until he consulted with a cardiologist. Within days, Defendant conducted a Review of the accident and immediately thereafter determined that Ambrose should be terminated on the stated basis that Ambrose had failed to recognize his cold as an illness and that he had improperly rested. However, in Request for Admission response No. 11, Defendant admits no employee of Defendant apart from Ambrose has been disciplined for driving with a cold. (Ex 10). Phillips in deposition stated frankly that in his many years of experience both as a manager and as a driver that drivers routinely drive with colds and that he has never known a single driver to be disciplined. Defendant also alleges that Ambrose was disciplined for using Dayquil, but admits that no employee of Defendant's has ever been disciplined for using Dayquil either. Kreider stated in his deposition that the only basis he had for determining that Ambrose had failed to rest properly was because he used Dayquil. Phillips and Kreider both admit that Ambrose took the DOT-required amount of rest and that Defendant did not have any greater number of hours required of its employees. Phillips stated that he had no evidence that Ambrose had improperly rested other than the fact that he was involved in an accident.

Kreider told Ambrose his employment was terminated because he could not return to work. When Ambrose inquired whether he would be able to return if he was cleared by a cardiologist, Kreider stated that Ambrose could reapply at a later date. Nicholson and Kreider's deposition testimony are inconsistent; Nicholson states that Ambrose informed Kreider, who in turn informed Nicholson, that Ambrose was not released to drive until he received a note from a cardiologist. Kreider denies this, despite the fact that Kreider arranged to have Ambrose get a ride from the

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804 (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

hospital to Salem because Ambrose could not drive, and admitted he knew Ambrose could not drive in his declaration. (Docket #35). Defendant has not offered any explanation for how Kreider could have (1) been aware that Ambrose was not released to drive, (2) believed that Ambrose was not injured physically in the crash and yet (3) not know that he suffered from a serious health condition that caused the accident.

Finally, Defendant's explanations are substantively weak. It strains credulity that Kreider genuinely believed that Ambrose's cold was responsible for him blacking out. "Improper rest" causing Ambrose's accident is equally untenable, especially given Ambrose's need to consult with a cardiologist. In deposition Kreider stated frankly that the cost of injuries caused by an accident would be taken into consideration in determining whether to terminate a driver, i.e. if an accident caused expensive injuries to the driver, this would be a basis for his termination. It was only after a break that he unconvincingly changed his testimony. While Defendant did not know how expensive Ambrose's injuries were going to be, it was aware that he had been hospitalized after a rollover accident, and that he was not cleared to drive until he consulted a cardiologist.

### 2. Defendant's proffered reasons for discriminating against Plaintiff are Pretextual

Defendant next argues that regardless of whether Defendant invoked the workers' compensation system, Ambrose cannot establish that Defendant's stated reasons for his termination were pretextual.

Assuming that Defendant has provided a legitimate non-discriminatory motive for terminating Ambrose, Ambrose then must demonstrate that the reason offered was pretextual. *Devi v. Or. Dep't of Corr.*, Case No. 6:12-cv-00841-AA, *10 (D.Or. July 9, 2013). A plaintiff can meet this burden in two ways: "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v.*

**Page 33 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804 (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

*U. of Cal. Davis, Bd. Of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (internal citation omitted). "Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present specific and substantial facts showing that there is a genuine issue for trial." *Noyes v. Kelly Serv.*, 488 F.3d 1163, 1170 (9th Cir. 2007). But, this "requirement is tempered by our observation that, in the context of Title VII claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is 'hardly an onerous one.'" *Noyes v. Kelly Serv.*, 488 F.3d 1163, 1170, *citing Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997).

To show pretext, "the plaintiff is not necessarily required to introduce evidence beyond that already offered to establish her prima facie case, although she may of course provide additional proof of the defendants' unlawful motivation." *Miller*, 797 F.2d at 732. The Ninth Circuit has recognized that in discrimination cases, an employer's true motivations are particularly difficult to ascertain, making such factual determinations generally unsuitable for disposition at the summary judgment stage. *Miller*, 797 F.2d at 732-733; *see U.S. Postal Srvc. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478 (1983) (discrimination cases present especially difficult issues for the trier of fact, as "[t]here will seldom be "eyewitness" testimony as to the employer's mental processes"); *Lowe v. City of Monrovia*, 775 F.2d 998, 1003 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986) (very little additional evidence is required to raise a genuine issue of fact regarding motive, and granting summary judgment is ordinarily inappropriate once a prima facie case has been established); *Yartzoff*, 809 F.2d at 1377 ("[S]ummary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII cases in which the plaintiff has established a prima facie case because of the elusive factual question of intentional discrimination.") (citations, internal quotations omitted). With respect to the quantum of proof necessary to demonstrate that the employer's proffered legitimate, nondiscriminatory reasons are pretextual, the Ninth Circuit has held that, it is only necessary at the summary judgment stage for the plaintiff to raise an issue of triable fact. *Noyes*, 488 F.3d at 1170-71.

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804  (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM

Both Kreider and Phillips gave testimony inconsistent with the documented reason for Ambrose's termination that he had "failed to recognize [his] illness" and that he had "improperly rested" and that these alleged infraction were violations of DOT policy. Phillips does not believe that there is any rule that prohibits driving with a cold. Neither Kreider nor Phillips are aware of any employee ever disciplined for driving with a cold other than Ambrose or for using Dayquil. Phillips testified that driving with a cold is commonplace, and Defendant makes no effort to discover whether drivers are driving with a cold. With respect to Ambrose's rest, Kreider does not believe he was in violation of any DOT rest regulations, and neither Phillips or Kreider believe that company policy requires more rest than DOT requires. Kreider admits there was no basis for determining Ambrose had not rested properly other than speculation based upon Dayquil use. Phillips does not believe using Dayquil alone justifies discipline for improper rest or that any rule forbids Dayquil use. The disparity between the documented reasons for Ambrose's discipline and the actual beliefs of the people disciplining him, taken together with the close proximity of time between Ambrose's protected activity and his discipline, shows that Defendant's reasons for terminating Ambrose were pretextual.

## **CONCLUSION**

For the aforementioned reasons, Defendant's Motion for Summary Judgment should be denied.

Dated this 21st day of October, 2013.

> s/John David Burgess
> Larry. Linder        OSB #010724
> John D. Burgess       OSB #106498
> Attorneys for Plaintiff
> Law Office of Larry L. Linder, LLC
> 2245 Commercial St. NE
> Salem, OR 97303

**Page 35 – Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion For Summary Judgment**

LAW OFFICE OF LARRY L. LINDER, LLC
2245 COMMERCIAL ST. NE
SALEM, OR 97303
(T)(503)585-1804 (F)(503)585-1834
INFO@SALEMEMPLOYMENTLAWYER.COM